PASSAIC COUNTY COURT OF COMMON PLEAS.

:BENJAMIN SPITZ, PETITIONER-APPELLANT, v. NATIONAL RUBBER MANUFACTURING COMPANY, RESPONDENT-APPELLEE.

Decided October 4, 1944.

For the petitioner-appellant, *David Cohn.*

For the respondent-appellee, *Manfield G. Amlicke.*

DELANEY, C. P. J. Petitioner-appellant filed a petition ·on July 26th, 1943, in the Workmen's Compensation Bureau for compensation for an alleged injury resulting from an .accident claimed to have been sustained by him on May 13th, 1943, while in respondent-appellee's employ. The matter ·was heard on its merits in the Bureau on December 29th, 1943, and January 26th, 1944, with the result that the petition was dismissed. From that determination the petitioner has appealed.

The, petitioner testified that about three o'clock in the morning of May 13th, 1943, while he and a co-employee were ·engaged in placing a rotor, weighing 250 or 300 pounds, upon .a two-wheeled truck, the rotor slipped, the truck moved, and in moving struck the petitioner and forced him against a neighboring machine, and that his back was injured thereby. His fellow-workman, who was authorized to administer first .aid in minor accidents, testified to like effect.

The record raises three questions: Did the alleged accident occur at all? If so, is the disability, if any, from which petitioner suffered, the result of the accident, either as the primary cause or by way of aggravating a pre-existing condition? And, finally, did his employer have knowledge or timely notice of the injury?

Fabrication and evasiveness so abound in the testimony of the petitioner as to strip it of probative force. It is refuted on highly material points by disinterested and trustworthy witnesses. When searching and probably not anticipated questions were propounded to the petitioner, he pretended a loss of recollection, notwithstanding that in the circumstances he should and must have recollected. He admitted that he had had two other and earlier accidents than the one claimed in the present proceeding. He placed the more recent of these two earlier accidents as having happened somewhat more than a year before December 29th, 1943, and said that he had instituted some sort of suit or proceeding to recover for a hurt to his stomach, but did not remember whether he had claimed an injury to his back also or whether he had testified in the matter; and when asked and pressed for an answer, whether he had recovered, he twice said, "I *think* I did," but had no memory on the point of the amount. The more remote of his two earlier accidents occurred in 1936. He remembered also that he was paid for damage to his truck, but whether he then made a claim for personal injury as well he did not recall. He testified that on the following day of his alleged accident of May 13th, 1943, and once again in the following week, his back was baked at the New Jersey Manufacturers Hospital in Clifton, but whether he was there examined by a physician he could not recollect. His impairment of memory, while remarkable, pales in comparison with his mendacity.

Dr. Harry Yolken examined him on November 14th, 1943, apparently for the purpose of fixing the extent or degree of his alleged disability, and saw him in connection with this matter then only. The doctor neither said nor intimated that he then treated the petitioner or recommended treatment.

To Dr. Andrew C. Ruoff, who examined the petitioner at the instance of the respondent on December 14th, 1943, the petitioner said that Dr. Yolken had administered treatment to him for this injury "on three or four occasions," or, in the petitioner's own version, "a few times." As already noted, the petitioner swore that he was twice treated at the New Jersey Manufacturers Hospital.

His testimony on this point was contradicted and shattered by the person in charge of the desk and records of the hospital. Her testimony was convincing and conclusive, and counsel for the petitioner stipulated that if the nurses at the hospital were called they would testify that they had no recollection or record of ever having administered treatment to the petitioner.

The fact is that apart from the testimony of the petitioner and his co-employee, Morris Goldstein, that the latter rubbed the former's back with liniment on the morning of May 18th, there is not a line in the whole body of the credible evidence that in the interval between May 13th, when the petitioner says an accident befell him, and December 29th, when he testified for himself in the proceeding in the Bureau, he received treatment or sought it.

The petitioner swore that the night supervisor knew of the accident at the moment of its occurrence, that it happened in his presence, and immediately amended this statement by saying that "he was there after it happened." His witness, Goldstein, gave him no support on this feature of his case. The night supervisor testified that he neither witnessed nor heard of the accident. Goldstein said that he had spoken to no one of the accident, but that following an established custum in minor accidents he made a note of it on a pad, detached the slip on which he had written, and placed it in a medicine cabinet, from which, in due course, it would have come to the notice of respondent. The respondent says the note never came to respondent's notice, and it may justly be inferred that Goldstein (who considered the accident so trivial that the petitioner said Goldstein told him that petitioner would be foolish to go home) made no note of it. The petitioner

said that he continued in respondent's employ, without losing any time, for several days after his injury, and Goldstein vaguely or cautiously corroborated him.

James Latona, whose helper the petitioner then was, and who worked in close proximity to the petitioner—"approximately about ten feet away"—learned nothing of the alleged accident, and said that although he saw the petitioner on the morning of May 13th, he did not see him on the night of that day nor at all on May 14th. No inquiry was made of this witness as to whether he ever saw him after May 14th, but his recollection was that the petitioner had quit his employment on the 18th. Whether then or a little later he quit, and quit not as he testified, because his work was heavy and there were no light jobs in respondent's shop (light jobs there were, his testimony notwithstanding), but because more remunerative work lured him elsewhere is a question.

Leonard Ledered, the general superintendent, said that he talked to the petitioner and inquired of him why he was leaving, and that the petitioner replied that he did not wish to work at night and could make more money elsewhere. The petitioner said that he received, exclusive of overtime, only $28 a week from the respondent; that on leaving his employment he took almost at once a course at a welding school, and on completing it obtained immediate employment at his new trade, from which he averaged $50 a week, and that on December 29th, 1943, having meanwhile moved into still another employment as a welder, he was earning $78 and $89 weekly.

The fact of the alleged accident has not been satisfactorily established. The record does not disclose the number of workers on the night shift at respondent's plant on May 12th-13th. Whatever their number, only two—the petitioner and Morris Goldstein—spoke of the alleged mishap; and the petitioner, himself discredited, if not much aided, in my judgment, by his witness.

It is not improper to observe (*Gilbert* v. *Gilbert*, 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213) that the Deputy Compensation Commissioner, by whom the matter was heard in

the Bureau, and who had opportunity and advantage for determining the value of the evidence not shared by me, reached the like conclusion. "I have observed," he wrote in his determination of facts on file, "the attitude and demeanor of the petitioner and his witness on the stand— and I did not place much credit in the story of the petitioner—the story of the petitioner's witness did not impress the court either."

If an accident occurred, the conviction is inescapable that it was without harmful consequences to the petitioner. Dr. Yolken quoted, without objection, Dr. Salzman, to whom the petitioner was sent for X-rays, as concluding from his study of the pictures, that the petitioner's trouble was "arthritic in origin." Dr. Ruoff found no objective sign of any ailment or disorder whatever. The petitioner's own conduct throughout seven and a half months, that is, from May 13th, when the accident is claimed to have occurred, until December 29th, when he testified in his own behalf, is a refutation of his claim.

In this view of the matter, it is unnecessary to resolve the third question arising from the record.

The judgment of the Workmen's Compensation Bureau is affirmed.